### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 3:23-cr-0010 |
| | ) |
| **JERVIN JEROME JEFFERS,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER

**BEFORE THE COURT** is Defendant Jervin Jerome Jeffers's ("Jeffers") Motion to Dismiss Count One of Information, filed on April 17, 2023. (ECF No. 35.) The Government filed an opposition on May 1, 2023. (ECF No. 39.) The Government also filed a Notice of Supplemental Authority on October 26, 2023. (ECF No. 52). The Court held an omnibus hearing with regards to the instant motion on October 27, 2023. For the reasons stated below, the Court will deny the motion.

### I.

The Government filed an Information on March 3, 2023, charging Jeffers with a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) (Count One, Alien in Possession of a Firearm) and 8 U.S.C. §§ 1325(a)(1) and 1352(a)(2) (Count Two, Illegal Entry). Jeffers argues that 18 U.S.C. § 922(g)(5)(A) is unconstitutional under the Second Amendment in light of the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

### II.

The Second Amendment to the U.S. Constitution, ratified on December 15, 1791, provides that "[a] well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court clarified the framework courts must use to analyze Second Amendment challenges while also reaffirming *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), in which the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122. The Supreme

Court rejected the two-step approach that the Courts of Appeals had developed to assess the Second Amendment claims, finding that step one, "which demands a test rooted in the Second Amendment's text, as informed by history," is consistent with *Heller*, but step two, which involves "means-end scrutiny," is not supported by *Heller* and *McDonald*. *Id*. at 2127. *Bruen* held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home," *id.* at 2122, and the following standard applies to the Second Amendment challenges:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126.
> Historical tradition can be established by analogical reasoning, which "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin.*" To be compatible with the Second Amendment, regulations targeting longstanding problems must be "distinctly similar" to a historical analogue. But "modern regulations that were unimaginable at the founding" need only be "relevantly similar" to one.

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc) (quoting *Bruen*, 142 S. Ct. at 2131-33).

### III.  DISCUSSION

Jeffers argues that § 922(g)(5)(A) violates his rights under the Second Amendment because, despite his alleged lack of Unite States citizenship, he is a child of the United States citizens, a parent of the United States citizen, and has been living in the United States and contributing to the community for approximately 13 years,[1] which makes him a member of "the people" within the meaning of the Second Amendment, and the Government cannot

---

[1] Jeffers purports to make an as-applied constitutional challenge based on the information provided in discovery. However, there is no evidence on the record that could provide the basis for an as-applied challenge. The Court will deem the motion as a facial challenge to the Second Amendment.

establish a historical tradition of alien-disarmament laws. The Government argues that Jeffers is not among the people protected by the Second Amendment because he is an alien unlawfully present in the United States, and § 922(g)(5)(A) is consistent with this nation's tradition of firearms regulations.

Section 922(g)(5)(A), as charged against Jeffers, prohibits any person who is an alien "illegally or unlawfully in the United States" from possessing any firearm "which has been shipped or transported in interstate or foreign commerce." Neither the Supreme Court nor any circuit court of appeals has ever held that § 922(g)(5), or specifically § 922(g)(5)(A), violates the Second Amendment. A review of the decisions addressing the Second Amendment challenges to Section 922(g)(5)(A) demonstrates the following:

### A. Pre-*Bruen* Circuit Court Decision Addressing Section 922(g)(5)(A)

Prior to *Bruen*, the Second, Fourth, Fifth, Eighth, Ninth, Tenth and Eleventh Circuits have upheld § 922(g)(5)(A) as constitutional, and no circuit court has decided to the contrary. The Fourth, Fifth and Eighth Circuits found that the Second Amendment does not protect aliens illegally or unlawfully in the United States. *United States v. Carpio-Leon*, 701 F.3d 974, 982 (4th Cir. 2012) (holding, on a Section 922(g)(5)(A) as-applied challenge, "that the Second Amendment right to bear arms does not extend to *illegal* aliens"); *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011), *as revised* (June 29, 2011) (finding, on Section 922(g)(5)(A) facial and as-applied challenges, that the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States"); *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011) (holding, on a Section 922(g)(5)(A) facial challenge, that "the protections of the Second Amendment do not extend to aliens illegally present in this country"). The Second, Ninth, Tenth and Eleventh Circuits upheld § 922(g)(5)(A), "assuming without deciding that, even as an undocumented alien, [defendant] is entitled to Second Amendment protection." *United States v. Perez*, 6 F.4th 448, 450 (2d Cir. 2021) (addressing a Section 922(g)(5)(A) as applied challenge); *United States v. Torres*, 911 F.3d 1253, 1261 (9th Cir. 2019) (addressing a Section 922(g)(5)(A) facial challenge, stating that "we agree with the Tenth Circuit's approach, because we believe the state of the law precludes us from reaching a definite answer on whether unlawful aliens are

included in the scope of the Second Amendment right"); *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012) (in a Section 922(g)(5)(A) challenge, stating that "we can avoid the constitutional question by *assuming,* for purposes of this case, that the Second Amendment, as a 'right of the people,' could very well include, in the absence of a statute restricting such a right, at least some aliens unlawfully here"); *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045 (11th Cir. 2022) (in a Section 922(g)(5) challenge, stating that "[w]e can assume for the sake of our decision that [defendant] is" among "the people").

### B. Post-*Bruen* Circuit Court Decisions Addressing Section 922(g)(5)(A)

At this time, only the Eight Circuit has considered the constitutionality of § 922(g)(5)(A) after *Bruen*, finding that "the law of our circuit is that unlawful aliens are not part of 'the people' to whom the protections of the Second Amendment extend." *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023) (relying on *Flores*). The court did not perform a historic analysis to determine whether Section 922(g)(5)(A) is consistent with this nation's historical tradition.

### C. Post-*Bruen* District Court Decisions Addressing Section 922(g)(5)(A)

Various district courts have upheld Section 922(g)(5) after *Bruen*. *See United States v. Ruiz*, No. 23-0105-WS, 2023 WL 7171451, at *1-2 (S.D. Al. October 31, 2023) (finding that the Eleventh Circuit decision in *Jimenez-Shilon* remains binding precedent after *Bruen*); *United States v. Morales-Gonzalez*, No. 23-CR-129-JFH-1, 2023 WL 6612480, at *2 (N.D. Okla. Oct. 10, 2023) (concluding that it was bound by the Tenth Circuit decision in *United States v. Huitron-Guizar*, which upheld on its face Section 922(g)(5)(A), and finding Section 922(g)(5)(A) constitutional as applied to any unlawfully present alien); *United States v. Pineda-Guevara*, No. 5:23-CR-2-DCB-LGI, 2023 WL 4943609, at *4, 6 (S.D. Miss. Aug. 2, 2023) (finding that unlawful aliens are not protected by the Second Amendment, but even assuming they are, Section 922(g)(5)(A) is consistent with the nation's historic tradition of firearm regulation); *United States v. Escobar-Temal*, No. 3:22-CR-00393, 2023 WL 4112762, at *3 (M.D. Tenn. June 21, 2023) (declining to decide whether unlawful aliens are "the people" protected by the Second Amendment because the court found that the Government satisfied its burden of showing that several types of founding-era laws are analogous to §

922(g)(5), namely, laws barring Native American, Catholic and loyalist gun ownership and laws disarming those who do not swear an oath of allegiance to the state); *United States v. Vizcaino-Peguero*, No. CR 22-168 (FAB), 2023 WL 3194522, at *4 (D.P.R. Apr. 28, 2023) (upholding Section 922(g)(5)(A) as applied to defendant, without deciding whether the Second Amendment protects illegal aliens); and *United States v. DaSilva*, No. 3:21-CR-267, 2022 WL 17242870, at *5 (M.D. Pa. Nov. 23, 2022) (addressing a facial challenge and assuming that illegal aliens are protected by the Second Amendment and upholding Section 922(g)(5)(A) based on the nation's historic tradition of firearm regulation).

### IV.

### A.

Neither the Supreme Court nor the Third Circuit Court of Appeals has ever decided whether individuals who in the United States illegally or unlawfully are among "the people" protected by the Second Amendment.

In a post-*Bruen* as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(1), the Third Circuit held that "despite his false statement conviction, Range remains among 'the people' protected by the Second Amendment" and, "the Government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming Range." *Range*, 69 F.4th at 98. In assessing whether Range was among "the people" protected by the Second Amendment, the Third Circuit first found that the references to "law-abiding, responsible citizens" in *D.C. v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), and *Bruen*, were dicta because the criminal histories of the plaintiffs were not at issue. *Range*, 69 F4th at 101. Second, the Third Circuit found that various Constitutional provisions reference "the people," explaining that, "[u]nless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among 'the people' for Second Amendment purposes would exclude him from those rights as well," and refusing "to adopt an inconsistent reading of 'the people'" in various constitutional provisions. *Id.* at 102. Third, the Circuit court agreed with the reasoning of then-Judge Amy Coney Barrett's dissenting opinion in *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019), "in which she persuasively

explained that 'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Range*, 69 F.4th at 102. Fourth, the Third Circuit found that "the phrase 'law-abiding, responsible citizens' is as expansive as it is vague." *Id.* The Third Circuit rejected "the Government's contention that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment. *Heller* and its progeny lead us to conclude that Bryan Range remains among 'the people' despite his 1995 false statement conviction." *Id.* at 103.

The Government acknowledges that § 922(g)(5)(A) does not prohibit firearm possession by all aliens.[2] Section 922(g)(5)(A) excludes from firearm possession only aliens who are illegally or unlawfully in the United States. Thus, the Court rejects the Government's contention that the right to keep and bear arms does not belong to noncitizens. In light of the Third Circuit's findings in *Range*, the Court also rejects the Government's assertion that "non-law-abiding" aliens are not among "the people" protected by the Second Amendment, as inconsistent with *Range*.

Although *Range* is a limited decision involving the Second Amendment challenge as applied to Range, *Range*, 69 F4th at 106 ("Our decision today is a narrow one."), the Court is mindful that the reasoning used by the Third Circuit in determining whether Range remains one of "the people" protected by the Second Amendment despite his conviction may be applied to determining whether Section 922(g)(5)(A) are among "the people" protected by the Second Amendment. However, for the purposes of the instant motion, the Court will assume without deciding that Section 922(g)(5)(A) are among "the people" protected by the Second Amendment and the conduct at issue is presumptively protected, *Jimenez-Shilon*, 34 F.4th at 1045; *DaSilva*, 2022 WL 17242870, at *5, and proceed to determination of whether Section 922(g)(5)(A) is consistent with our nation's historical tradition of firearm regulation.

**B.**

---

[2] "The term 'alien' means any person not a citizen or national of the United States." 8 U.S.C.A. § 1101 (a)(3).

In *Jimenez-Shilon*, the Eleventh Circuit conducted a historical analysis to determine whether § 922(g)(5)(A) is consistent with the nation's historic tradition of firearm regulation. The court first examined the laws of England predating the founding, noting that "the right to own guns in eighteenth-century England was statutorily restricted to the landed gentry" and "a sharp distinction" was made between the privileges of natural-born or naturalized subjects and aliens. *Jimenez-Shilon*, 34 F.4th at 1046-47. The English view was followed by some colonies that disarmed "people who didn't support the Revolution," as a person's "undivided allegiance to the sovereign" and "membership in the political community" was perceived necessary for conferring the right to keep and bear arms. *Id.* at 1048 (citation omitted); *United States v. Perez*, 6 F.4th at 462 (Menashi, J., concurring) ("Following independence, membership in the political community remained a precondition to the right to keep and bear arms, as 'the new state governments . . . framed their police power to disarm around a test of allegiance.'"). Although certain "exclusions would be unconstitutional today," for example laws barring members of Native American tribes and enslaved people from bearing arms, *Drummond v. Robinson Twp.,* 9 F.4th 217, 228 n. 8 (3d Cir. 2021) (quoting *Kanter v. Barr*, 919 F.3d 437, 458 n.7 (7th Cir. 2019) (Barrett, J., dissenting)), the early laws of the colonies show that there is a historical tradition of disarming "groups associated with foreign elements." *Id.* (citation omitted). The Eleventh Circuit noted various Framing-era (1787-1788) sources referencing "arms-bearing as a *citizen's* right" that was associated with national loyalty and political body membership, such as Federalist Papers, which "explained that one of the bulwarks of personal liberty was the prospect of 'citizens with arms in their hands.'" *Id*. As the Supreme Court noted, "the conception of the militia at the time of the Second Amendment's ratification was the body of all *citizens* capable of military service." *Heller*, 554 U.S. at 627 (emphasis added). Early state constitutions support the view that the Second Amendment incorporated the principle of limiting the right to keep and bear arms to citizens. *Id.* at 1049 (citing Pennsylvania Constitution of 1790, Kentucky Constitution of 1792, Mississippi Constitution of 1817, Connecticut Constitution of 1818, Alabama Constitution of 1819, and Maine Constitution of 1819).

    The Court finds the Eleventh Circuit's historic analysis in *Jimenez-Shilon* instructive. Upon careful consideration of the parties' arguments, the Court is satisfied that the Government has met its burden of showing that the historic laws disarming individuals who lacked membership in the political community or were unwilling to comply with the law are sufficiently analogous to § 922(g)(5)(A) barring aliens illegally or unlawfully in the United States. The Court finds that § 922(g)(5)(A) is consistent with the nation's historical tradition of firearm regulation.

V.

    For the reasons stated above, it is hereby

    **ORDERED** that the Defendant's Motion to Dismiss Count One of Information, ECF No. 35, is **DENIED**.

**Date:** April 12, 2024                               */s/ Robert A. Molloy*
                                                                      **ROBERT A. MOLLOY**
                                                                      **Chief Judge**